UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-cr-20487-ALTMAN

UNITED STATES OF AMERICA,

*v.*

GARY WILSON,

    *Defendant.*

_____/

## ORDER DENYING MOTION FOR SENTENCE REDUCTION

Gary Wilson ("Wilson"), our Defendant, has filed a Motion for Reduction of Sentence under 18 U.S.C. § 3582(c)(2), 18 U.S.C. § 3582(c)(1)(B), and § 404(b) of the First Step Act (the "Motion") [ECF No. 647].[1] That Motion is now ripe for adjudication. *See* Government's Response [ECF No. 651]; Wilson's Reply [ECF No. 652]. After careful review, we **DENY** the Motion.

### THE LAW

Under the First Step Act, "[a] court that imposed a sentence for a covered offense *may* . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 [Pub. L. 111–220, 124 Stat. 2372 ("Fair Sentencing Act §§ 2, 3")] . . . were in effect at the time the covered offense was committed." First Step Act, Pub. L. 115–391, § 404(b), 132 Stat. 5222 ("First Step Act § 404(b)") (cleaned up). Only "crack-cocaine offenses for which [21 U.S.C.] sections 841(b)(1)(A)(iii) and (B)(iii) provide the penalties" qualify as "covered offenses." *United States v. Jones*, 962 F.3d 1290, 1300–01 (11th Cir. 2020), *judgment vacated sub nom., Jackson v. United States*, 143 S. Ct. 72 (2022), *and opinion reinstated*

---

[1] Although Wilson styles his Motion under these three provisions, he requests relief only under two of them: § 3582(c)(1)(B) and § 404(b) of the First Step Act. *See generally* Motion. In his only reference to § 3582(c)(2), in fact, Wilson says that *that* law is *inapplicable* to his case. *See id.* at 15 (citing *United States v. Holloway*, 956 F.3d 660, 666 (2d Cir. 2020) ("A First Step Act motion, however, is not properly evaluated under 18 U.S.C [§] 3582(c)(2) [but rather] [§] 3582(c)(1)(B), which provides that a 'court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute.'")). We therefore won't discuss that provision further.

*on reconsideration sub nom.*, *United States v. Jackson*, 58 F.4th 1331 (11th Cir. 2023), *cert. denied*, 144 S. Ct. 621 (2024).

But, while "[d]istrict courts have the *authority* to reduce eligible movants' sentences under the First Step Act, [ ] they are not *required* to do so" and "have wide latitude to determine whether and how to exercise their discretion in this context." *United States v. Moore*, 2022 WL 3651932, at *3 (11th Cir. Aug. 25, 2022) (cleaned up & emphasis added); *see also United States v. Gonzalez*, 71 F.4th 881, 885 (11th Cir. 2023) ("As its statutory text indicates, and as we have explained, § 404(b) of the First Step Act authorizes district courts to reduce the sentences of defendants with covered offenses but does not require them to do so."); *accord* First Step Act, Pub. L. 115–391, § 404(c), 132 Stat. 5222 ("First Step Act § 404(c)") ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.").

## THE FACTS

In 2003, Wilson—the leader of a South Florida drug-trafficking organization, *see* Response at 2—orchestrated the kidnapping and beating of one of his organization's members, *see* Presentence Investigation Report ("PSI") ¶¶ 16, 26 ("Roody Laguerre [the victim, was a ] . . . cocaine supplier[ ] to the Wilson organization."); Order Denying Motion for Home Confinement [ECF No. 613] at 2 ("The Defendant directed other individuals to kidnap and beat an illegal drug supplier . . . to make him disclose the location of his drug supply."). Wilson's crew also kidnapped the victim's three-year-old goddaughter. *See* Response at 6. Before the victim escaped, "he was tortured with an iron[.]" Order Denying Motion for Home Confinement at 2.

On July 15, 2004, a federal grand jury returned an indictment, charging Wilson with conspiring to possess with intent to distribute five kilograms or more of cocaine (Count 1), conspiring to commit robbery and extortion (Count 2), and attempting to possess with the intent to distribute 500 grams or more of cocaine (Count 3). *See* Indictment [ECF No. 1]. The jury later returned a superseding

indictment, which made two changes to the original charges. *First*, it added a crack-cocaine element—conspiracy to possess with intent to distribute fifty grams or more of crack—to Count 1. *Second*, it changed the amount of cocaine charged in Count 3 to *five kilograms* or more—instead of 500 grams or more. *See* Superseding Indictment [ECF No. 220].

Before trial, the Government filed a notice under 21 U.S.C. § 851, seeking to enhance Wilson's sentence on Count 3 "based on . . . prior felony offense convictions . . . pursuant to the provisions of Title 21, United States Code, Section 841(b)(1)(A)." Government's 851 Notice [ECF No. 325] at 1–2; *see also id.* at 1 ("The government asserts that this prior conviction enhances the penalty if the defendant is convicted of Count 3 of the Superseding Indictment."). Those prior convictions were:

1) An October 20, 1997, conviction for possession of cocaine in the 7th Circuit Court of Florida, in case number CRC9730354CFAE.
2) A December 19, 1997, conviction for possession of cocaine in the 7th Circuit Court of Florida, in case number CRC9733160CFAE.

*Id.* at 1. Wilson proceeded to trial, where he was found guilty of conspiring to possess with intent to distribute five kilograms or more of cocaine and fifty grams or more of crack-cocaine (Count 1), conspiring to commit robbery and extortion (Count 2), and attempting to possess with the intent to distribute five kilograms or more of cocaine (Count 3). *See* Verdict [ECF No. 387].[2]

At sentencing, Judge Marcia G. Cooke (of our Court) ordered further briefing on the § 851 enhancement. *See* Oct. 19, 2005, Sentencing Tr. [ECF No. 474-1] at 69:07–09 ("I also don't want to be rushed in making this determination about . . . the notice. So I am going to set this matter over for two weeks."). These issues included whether Wilson received proper notice of the enhancement, *id.* at 58:05–10 (Court: "I think the major issue as it relates to Mr. Wilson is the issue of whether or not he was misinformed as to that 1997 sentence and whether or not the defense had sufficient notice

---

[2] Unfortunately, nothing in this case is that simple. The jury's verdict actually reflects a smaller crack quantity for Count 1. *Compare* Verdict at 2 (finding "less than 5 grams" as the appropriate weight for Count 1), *with* Superseding Indictment at 2 (charging 50 grams or more in Count 1). Much more on this below. *See post*, at n.4.

of—that this would be a mandatory—a potential for a mandatory life sentence as opposed to a sentence that can be computed within the guidelines."); whether the two prior convictions were sufficient to trigger the enhancement, *compare id.* at 09:19–22 (Gov't: "Now, from what I understand right now, the defendant is challenging one [prior] conviction and not the other."), *with id.* at 09:24–10:05 (Defense: "Judge, I misstated. . . . I do challenge both."); and whether the government's notice was timely, *id.* at 03:10–05:19 (Defense: "What I have a problem with . . . is the government's objections to the PSI and the government's request to seek items which were not contained in the PSI. I believe that it is untimely and it should be stricken. . . . I relied on the initial PSI in filing my response to the government's notice of enhancement. In the PSI, it basically said that . . . [one of the prior 1997 drug convictions is] not a drug crime and the government filed no response to my response, no reply. I feel, at this point, that the Court should not consider that conviction for the purposes of enhancement.").[3]

After reviewing the supplemental briefing, Judge Cooke determined that "the government's 851 enhancement [wa]s timely filed[ ] [and that]  it [wa]s legally sufficient[.]" Nov. 9, 2005, Sentencing Tr. [ECF No. 475-1] at 20:06–15. Judge Cooke then sentenced Wilson to "mandatory life"—at first without specifying that the enhancement applied solely to Count 3. *See id.* at 01:05:49–06:21 ("[A]s to Mr. Wilson, I find, as I said before, that the enhancement was timely filed and is legally sufficient, and given the criminal history in this case and total offense level, that means the sentence in this case is mandatory life."). But, when the Government clarified that "the enhancements are limited to Count

---

[3] Before continuing the sentencing, Judge Cooke added: "This is what I want to do. I want this entire matter to be sentenced as a group for a number of reasons. I think there are some issues that cross over. I think the issues of drug amounts and who is organizing and who is not organizing, what the role is of everyone in this case, I would like to keep it as a unit. That may prove to be folly on my part." Oct. 19, 2005, Sentencing Tr. [ECF No. 474-1] at 68:25–69:06. Judge Cooke wasn't here suggesting that the counts should be sentenced as a group. She was saying that she wanted to sentence all the *Defendants* together (which is what she did on November 9, 2005, after hearing additional arguments and receiving the supplemental briefing she'd ordered).

3," *id.* at 01:10:13, Judge Cooke specified that "[t]he Count 1 sentence, then, is 360 months. The Count 2 sentence is 240 months. *The Count 3 sentence, by virtue of the enhancement, is the mandatory life*," *id.* at 01:10:51–11:08 (emphasis added). And the Judgment made clear that Wilson received "a term of LIFE as to count 3; 360 months as to count 1; 240 months as to count 2"—all counts to run concurrently with one another. Judgment [ECF No. 447] at 2.

On January 13, 2009, the Eleventh Circuit affirmed Wilson's convictions. *See United States v. Collins*, 300 F. App'x 663, 665 (11th Cir. 2008) ("Wilson . . . appeals [his] convictions . . . we affirm the district court's rulings *in toto*."). Wilson has since filed several post-conviction motions—all of which Judge Cooke denied. *See generally* Order Denying Motion to Vacate Pursuant to 28 U.S.C. § 2255 [ECF No. 549]; Order Denying Motion for Home Confinement.

In *this* Motion, Wilson says that he's "eligible for a reduced sentence" under Section "404 of the First Step Act of 2018" because his "count one is a covered offense under 404 of the First Step Act." Motion at 3. In Wilson's view, "[o]nce eligibility is established, the First Step Act authorizes this court to impose a reduced aggregate sentence on *all* counts of conviction in this case." *Id.* at 5 (emphasis added). He adds that, since he was "convicted of at least one covered offense . . . [and] is [therefore] eligible for a reduced sentence," we "must recalculate the applicable advisory Guidelines range in determining whether and to what extent a reduced sentence is appropriate." *Id.* at 3 (cleaned up).

## ANALYSIS

### I.  Two Preliminary Things

#### a.  Successive First Step Act Motions

The First Step Act expressly disapproves of successive motions. "No court," it says, "shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the

Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) . . . *or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits*." First Step Act § 404(c) (emphasis added). The Supreme Court has interpreted this provision to mean that "[a] district court may not consider a First Step Act motion if the movant's sentence was already reduced under the Fair Sentencing Act *or if the court considered and rejected a motion under the First Step Act*." *Concepcion v. United States*, 597 U.S. 481, 496 (2022) (emphasis added); *Gonzalez*, 71 F.4th at 886 (explaining that First Step Act § 404(c) bars courts from "consider[ing] *successive* First Step Act motions"); *United States v. Denson*, 963 F.3d 1080, 1087 (11th Cir. 2020), *abrogated on other grounds by Concepcion*, 597 U.S. 481, 486–88 ("[A] defendant can file only one motion for resentencing and *bars a second First Step Act motion if the first was denied after a complete review of the motion on the merits*.") (cleaned up & emphasis added)).

Judge Cooke denied Wilson's previous First Step Act motion—his Emergency Motion Requesting Home Confinement and/or a Reduction in Sentence Pursuant to the First Step Act and 18 U.S.C. § 3582(c)(1)(A)(i) and § 28 U.S.C. 1651 (the "Motion for Home Confinement") [ECF No. 604]. *See generally* Order Denying Motion for Home Confinement at 2. In that earlier motion, Wilson claimed that he could show "extraordinary and compelling" reasons for his release—specifically, that "the Covid-19 pandemic" and the "prison conditions . . . prevent[ed] [him from providing] self-care, producing a death trap and a death sentence" for him. Motion for Home Confinement at 2. He based his Motion for Home Confinement in part on First Step Act, Pub. L. 115–391, § 603, 132 Stat. 5238– 41 ("First Step Act § 603"). Wilson correctly observed that § 603 of the First Step Act "changed the process by which § 3582(c)(1)(A) compassionate release occurs: [I]nstead of depending upon the BOP Director to determine an extraordinary circumstance and move for release, a court can now . . . consider the defendant's own motion to be resentenced, even one which the BOP opposes." Motion for Home Confinement at 22 (quoting First Step Act § 603 (cleaned up)).

As this recitation makes plain, Wilson's earlier motion didn't cite § 404(c). *See generally* Motion for Home Confinement. Wilson instead cited a different section of the First Step Act (§ 603), which doesn't appear to convert *this Motion* into a successive First Step Act motion within the meaning of § 404(c)'s bar. *See* First Step Act § 404(c) (precluding review of a subsequent First Step Act motion only "if a previous motion *made under this section*" was denied on the merits (emphasis added)). Admittedly, though, the Supreme Court has painted with a broader brush in describing the scope of § 404(c)'s bar, observing that "[a] district court may not consider a First Step Act motion . . . if the court considered and rejected a motion *under the First Step Act*." *Concepcion*, 597 U.S. at 496 (emphasis added). And the Eleventh Circuit hasn't told us whether a prior motion for compassionate release that relies on § 603 of the First Step Act precludes a defendant from filing a subsequent motion under § 404. Fortunately, we don't need to get into all that here because the Government never suggests that the denial of Wilson's prior First Step Act motion somehow bars him from filing this one, so it has waived any such argument. *See United States v. Campbell*, 26 F.4th 860, 873 (11th Cir. 2022) ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court *sua sponte* [only] in extraordinary circumstances."); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009) ("Arguments not properly presented . . . are deemed waived."). And the Government was entitled to waive this issue because the Eleventh Circuit has said that § 404(c)'s bar isn't jurisdictional. *See United States v. Deruise*, 2023 WL 3668929, at *4 (11th Cir. May 26, 2023) ("The fact that § 404(c) bars a district court from awarding only one type of remedy in a criminal case indicates that it is not jurisdictional.").

### b.  Wilson's Claim that His Life Sentence Exceeded the Statutory Maximum

In his Reply, Wilson suggests that his sentence "was in excess of the maximum authorized by law," 28 U.S.C. § 2255(a), and should be vacated or corrected, *see* Reply at 2 ("Had Mr. Wilson been sentenced under these reduced penalties today, he would have received a sentence of 480 months as opposed to life with respect to his 841 covered and non-covered offenses. . . . *Alleyne* and *Apprendi* today dictate[ ] that *in order to authorize the imposition of a sentence exceeding the maximum allowable*, can [sic] only be allowable with a jury finding of a specific threshold drug quantity, must be treated as an element, charged in the indictment[,] and proved to a jury beyond a reasonable doubt. [ ]Wilson was convicted and sentenced . . . prior to *Alleyne* at which time quantity was not a required element to be charged and proven to the jury." (cleaned up & emphasis added)).

Wilson doesn't suggest that he's collaterally attacking his sentence under § 2255. Nor could he because he's already filed a Motion to Vacate Pursuant to 28 U.S.C. § 2255 [ECF No. 544]. In that prior motion, he characterized as "incorrect" Judge Cooke's determination that his Sixth Amendment challenge to the "validity of at least one" of the "prior felony drug convictions" the Government used to justify the "[e]nhancement . . . pursuant to . . . § 851" was "time barred." *Id.* at 17. He also complained that "appellate counsel failed to present this issue" on direct appeal. *Ibid.*

Judge Cooke rejected this argument and denied Wilson's motion. *See* Order Denying Motion to Vacate Pursuant to 28 U.S.C. § 2255 at 6 ("Specifically, Wilson argues that at least one of the 1997 felony convictions was obtained in violation of his Sixth Amendment right to counsel and therefore cannot be used for sentencing enhancement purposes."). In doing so, Judge Cooke found that "Wilson's [two 1997 felony convictions for drug possession] . . . occurred more than five years ago"— and that, as a result, "[a]ny challenge as to the validity of the convictions is thus time barred." *Id.* at 7. Wilson never appealed this decision. *See generally* Docket.

To the extent Wilson merely intended his reference to *Apprendi* and *Alleyne* to "redefine his offense for purposes of a First Step Act motion"—instead of "us[ing] *Apprendi* to collaterally attack his sentence" under § 2255—the Eleventh Circuit has held that he can't do that, *see Jackson*, 58 F.4th at 1334 ("[J]ust as a movant may not use *Apprendi* to collaterally attack his sentence, he cannot rely on *Apprendi* to redefine his offense for purposes of a First Step Act motion." (cleaned up)). In other words, Wilson "cannot use a motion for a reduced sentence to relitigate the statutory maximum penalty for his offense,[ ] just as movants cannot use First Step Act motions to relitigate factual predicates for sentencing enhancements." *United States v. Williams*, 63 F.4th 908, 912 (11th Cir. 2023), *cert. denied*, 144 S. Ct. 252 (2023) (cleaned up). "Instead, a motion to vacate is the proper vehicle for collateral challenges to the legality of a federal sentence[.]" *Ibid.*

And, as we've said, Wilson cannot file a motion to vacate for three reasons. *First*, he's already filed one. *Second*, Judge Cooke denied that prior motion. *Third*, he hasn't sought permission from the Eleventh Circuit to file a second or successive habeas motion. *See* 28 U.S.C. §§ 2244(b)(3)(A) ("Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."), 2244(a) ("No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus, except as provided in section 2255."), 2255(h) ("A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals[.]"). We therefore reject Wilson's *Apprendi* and *Alleyne* arguments—whatever he intended them for. *See United States v. Williams*, 2023 WL 4234185, at *3–4 (11th Cir. June 28, 2023) ("[T]o the extent that Williams argued for a reduction based on *Concepcion* and other changes in the law [in his motion under § 603 of the First Step Act], he was in

essence collaterally attacking his conviction and sentence. . . . Williams had previously filed a § 2255 motion and had not sought leave from this Court to file a second or successive § 2255 motion. Thus, the district court did not err in dismissing in part the motion as an unauthorized successive § 2255 motion.").

## II.    Wilson Received a Life Sentence for a Non-Covered Offense

We turn then to the merits of Wilson's claim—and, for two reasons, we deny Wilson's Motion. *First*, we cannot reduce Wilson's life sentence on Count 3. "A court that imposed a sentence for a covered offense may . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." First Step Act § 404(b). A "covered offense" is "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act . . . , that was committed before August 3, 2010." *Ibid.*

There's no dispute that Count 1 is a covered offense. Wilson obviously thinks so. *See* Motion at 3 (arguing that "count one is a 'covered offense'"); *see also id.* at 11 ("Mr. Wilson's underlying drug conspiracy which involved 50 grams or more of crack cocaine and five kilograms or more of powder cocaine is a covered offense[.]" (citing *United States v. Gonzalez*, 9 F.4th 1327, 1331 (11th Cir. 2021), *cert. granted, judgment vacated sub nom. by Soul Gonzalez v. United States*, 142 S. Ct. 2900 (2022))). And the Government agrees. *See* Resp. at 16 ("[T]he government concedes that Wilson's conviction [for Count 1] is a covered offense[.]").[4] Because the parties agree that Count 1 is a covered offense, they've waived

---

[4]    We think it makes sense to say that Count 1, *as charged*, constitutes a "covered offense," because it involved a "[c]onspiracy to possess with intent to distribute" (among other things) "fifty grams or more of crack cocaine." Judgment at 1 (cleaned up). That, after all, is what Wilson was "sentenced for," and it's what was "charged in his [superseding] indictment . . . and recorded in his judgment." *United States v. Taylor*, 982 F.3d 1295, 1299–1300 (11th Cir. 2020) (holding that the same offense, conspiring to possess with intent to distribute at least 5 kilograms of powder cocaine and at least 50 grams of crack cocaine, qualified as a "covered offense"); *United States v. Wilson*, 830 F. App'x 617, 619 (11th Cir. 2020) (directing district courts to "consult the record, including the movant's charging

any argument that it isn't. *See Campbell*, 26 F.4th at 873 ("[F]ailure to raise an issue in an initial brief . . . should be treated as a forfeiture of the issue, and therefore the issue may be raised by the court *sua sponte* [only] in extraordinary circumstances."); *Sapuppo*, 739 F.3d at 681 ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority."); *Hamilton*, 680 F.3d at 1319 ("[T]he failure to make arguments and cite authorities in support of an issue waives it."); *In re Egidi*, 571 F.3d at 1163 ("Arguments not properly presented . . . are deemed waived."). So, we'll proceed on the assumption that Wilson's Count 1 qualifies as a "crack-cocaine offense[ ] for which [21 U.S.C.] sections 841(b)(1)(A)(iii) and (B)(iii) provide the penalties[.]" *Jones*, 962 F.3d at 1300–01. Wilson, therefore, "has not already been sentenced [on Count 1] 'as if' the Fair Sentencing Act had been in effect because he did not receive the lowest statutory penalty available under the Fair Sentencing Act for his offense." *United States v. Russell*, 994 F.3d 1230, 1238 (11th Cir. 2021) (cleaned up). So, he's eligible for a reduction on Count 1.

---

document, the jury verdict or guilty plea, the sentencing record, and the final judgment, to determine whether the movant's offense . . . was a covered offense").

As we've said, however, *see ante*, at n.2, nothing in this case is that simple. The jury's verdict after trial reflects a smaller crack quantity. *Compare* Verdict at 2 ("less than 5 grams"), *with* Superseding Indictment at 2 (charging Wilson in Count 1 with 50 grams or more of crack). That wouldn't be an issue for Wilson, except that "offenders are eligible for a sentence reduction only if they were convicted of a crack offense that triggered a mandatory minimum." *Terry v. United States*, 593 U.S. 486, 491–92 (2021). And a conviction for less than five grams of crack cocaine *doesn't* trigger a mandatory minimum. *See id.* at 489–90 (holding that the petitioner's conviction for possession with intent to distribute an "unspecified amount" of crack, later determined by the sentencing court to involve "about 4 grams," wasn't a "covered offense" under the First Step Act).

Still, we'll give Wilson the benefit of the doubt and assume that he was convicted of the larger amount. And there's ample evidence to support this view. His judgment, for one thing, describes Count 1 as a "[c]onspiracy to possess with intent to distribute" (among other things) "*fifty grams or more* of crack." Judgment at 1 (cleaned up & emphasis added). The PSI held Wilson responsible for "50 grams or more" of crack. *See* PSI ¶ 32 (calculating the base offense level). And the Court overruled Wilson's objections to the PSI. *See* Nov. 9, 2005, Sentencing Tr. [ECF No. 475-1] at 45–46 (Q: "[T]he Court is overruling the objections to the PSI [for Wilson]? A [the Court]: Yes."). So, the record supports Wilson's position that the court "imposed a sentence" for a "covered offense." *Jones*, 962 F.3d at 1298.

The problem for Wilson is that he received a mandatory life sentence, *not* on Count 1, but on Count 3. *See* Judgment at 2 (imposing "a term of LIFE as to count 3"). And Count 3 charged him with conspiring to possess with intent to distribute *cocaine*, not crack. *See* Superseding Indictment at 7 ("Pursuant to Title 21, United States Code, Sections 841(b)(1)(A)(ii), it is further alleged that this violation involved five (5) kilograms or more of a mixture and substance containing a detectable amount of cocaine."). Count 3 thus doesn't qualify as a "covered offense" because it had *nothing* to do with crack cocaine. *See United States v. Mathews*, 837 F. App'x 701, 704 (11th Cir. 2020) ("Mathews's offenses [including conspiracy to possess with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A)(ii) and 846] are not covered offenses for purposes of section 404, as he was not convicted of a crack-cocaine offense. Thus section 404 does not apply to Mathews."). So, while we "have the authority" under § 404 to reduce Wilson's sentence on his *covered* offense (Count 1), *see United States v. Baptiste*, 834 F. App'x 547, 551 (11th Cir. 2020) (citing *Jones*, 962 F.3d at 1304), we cannot reduce his sentence on Count 3, *see United States v. Phillips*, 2022 WL 1491290, at *2 (11th Cir. May 11, 2022) ("[In] *Denson*, we held that the First Step Act does not authorize a district court to . . . change or reduce the defendant's sentences on counts that are not covered offenses."); *United States v. Potts*, 997 F.3d 1142, 1145 (11th Cir. 2021) ("Potts' crack cocaine offenses qualify as 'covered offenses' under the First Step Act, making him eligible for a reduction of his supervised release terms on his two drug convictions. However, the First Step Act did not change his 5-year concurrent supervised release term on his firearm conviction. *So, no matter the drug convictions, Potts still has a 5-year supervised release term on his firearm conviction*." (emphasis added)).[5]

---

[5] Wilson says the Government "concedes" that, if he's eligible for a sentence reduction on his covered crack offense (Count 1), we "have the authority" to reduce his sentences on the other counts too. *See* Motion at 6. But the Government said no such thing. In the Government's view, although Wilson "may be eligible for resentencing for Count 1, he was sentenced to a mandatory life sentence under Section 851 enhancement for Count 3." Response at 16. And, the Government says, we "may *not* [ ] modify . . . [Wilson's] sentences for non-covered offenses [like Count 3]." *Id.* at 10 (emphasis added).

*Second*, the sentence-packaging doctrine doesn't help Wilson. Wilson insists that the "First Step Act gives district courts authority to [r]e-sentence[.]" Motion at 4 (first citing *United States v. Bell*, 822 F. App'x 884, 887 (11th Cir. 2020); and then citing *United States v. Venable*, 943 F.3d 187, 194 (4th Cir. 2019)). He says that "this court's authority to re-sentence [him] on[ ] count[s] one, two and three is supported by the sentence-package doctrine that applies in this circuit[.]" *Id.* at 6 (citing *United States v. Clarke*, 2019 WL 7499892, at *2 (N.D. Fla. Oct. 24, 2019) (Stafford, J.)).[6]

According to the Eleventh Circuit, the "sentence packaging doctrine" is "grounded in the notion that, especially in the [Sentencing G]uidelines era, sentencing on multiple counts is an inherently interrelated, interconnected, and holistic process which requires a court to craft an overall sentence—the 'sentence package'—that reflects the guidelines and the relevant [18 U.S.C.] § 3553(a) factors." *United States v. Orr*, 2024 WL 2153430, at *2 (11th Cir. May 14, 2024) (cleaned up). So, "when a conviction or sentence for one or more of the component counts is vacated, the district court 'should be free to reconstruct the sentencing package . . . to ensure that the overall sentence remains consistent with the guidelines, the § 3553(a) factors, and the court's view concerning the proper sentence in light of all the circumstances.'" *Ibid.* (cleaned up). But neither *Orr* nor the cases it cites had anything to do with the First Step Act. And that's important because, when it comes to the First Step Act, the Eleventh Circuit "has emphasized that [the First Step Act] 'does not authorize the district court to conduct a plenary or *de novo* resentencing.'" *United States v. Baptiste*, 834 F. App'x 547, 550 (11th Cir. 2020) (quoting *Denson*, 963 F.3d at 1089)). In *Baptiste*, therefore—as here—the "sentencing-package doctrine [wa]s of no use to Baptiste" because, "[a]lthough we have applied the sentencing-package doctrine in *some* instances, district courts still lack the inherent authority to modify a term of

---

[6] Wilson refers to this case as an Eleventh Circuit case, "United states v Clarke, U.S Dist Lexis 224646 (11th Cir 2019)," Motion at 6, but (as our citation reflects) this is actually a decision from the Northern District of Florida.

imprisonment except to the extent that a statute expressly permits." *Ibid.* (quoting *Jones*, 962 F.3d at 1297 (emphasis added & cleaned up)).

In the Eleventh Circuit, in other words, a district court "is permitted to reduce a defendant's sentence" under § 404(b) "only on a 'covered offense'" and "is not free . . . to change the defendant's sentences on counts that are not 'covered offenses.'" *Denson*, 963 F.3d at 1089 (cleaned up); *see also United States v. Files*, 63 F.4th 920, 930–31 (11th Cir. 2023) ("[W]e cannot say that [the Supreme Court in] *Concepcion* abrogated *Denson*'s determination *that district courts may not reduce defendants' sentences for non-covered offenses.*" (emphasis added)); *cf. United States v. Clarke*, 822 F.3d 1213, 1215 (11th Cir. 2016) ("[W]e are bound by prior decisions of this Court unless the Eleventh Circuit sitting en banc overrules the prior decision." (citing *Hattaway v. McMillian*, 903 F.2d 1440, 1445 n.5 (11th Cir. 1990))).

As we've said, the Circuit made this point pellucid in *Baptiste*. In that case, a jury found "Baptiste guilty of: conspiring to possess with intent to distribute at least five kilograms of cocaine, in violation of 21 U.S.C §§ 846 and 851 (Count 1); conspiring to possess with intent to distribute at least 50 grams of crack cocaine, in violation of 21 U.S.C §§ 846 and 851 (Count 3); and three counts of distributing and possessing with intent to distribute at least 500 grams of cocaine in violation of 21 U.S.C §§ 846 and 851 (Counts 23, 24, and 26)." *Baptiste*, 834 F. App'x at 548. As here, because Baptiste had previously been convicted of a drug felony, "the government filed notice that Baptiste faced a minimum term of imprisonment of 20 years and a maximum term of life on Counts 1 and 3, and a minimum term of imprisonment of 10 years and a maximum term of life on Counts 23, 24, and 26." *Id.* at 548–49. In other words, like Wilson's sentence on Count 3, "Baptiste's sentences were [ ] enhanced pursuant to § 851." *Id.* at 549. Baptiste first "moved to reduce his sentence under Amendment 782 of the Sentencing Guidelines," and the district court granted this first motion and "reduced his sentence to 262 months." *Ibid.* "Baptiste subsequently filed a motion for relief under the First Step Act, seeking a further reduction of his sentence," which the district court denied. *Ibid.* In

denying Baptiste's First Step Act motion, the district court held that "only one of the convictions underlying Baptiste's sentence—Count 3—qualified as a covered offense under the First Step Act." *Ibid.* It also "concluded that, although the Fair Sentencing Act and First Step Acts reduced his statutory sentencing range as to Count 3, his guideline range remained unchanged." *Ibid.* Given that "the statutory penalties for the other counts are unchanged and Defendant's guideline is unchanged," the district court "decline[d] to modify Baptiste's sentencing." *Id.* at 551.

On appeal, the Eleventh Circuit rejected "Baptiste's arguments" that "he was entitled to a plenary resentencing under the First Step Act §§ 401 and 404" and that "the district court should have reduced his total sentence under the 'sentencing package doctrine[.]'" *Id.* at 548. As the panel explained, "Counts 1, 23, 24, and 26 do not constitute 'covered offenses' under the First Step Act, and the district court properly concluded that it lacked authority to modify the sentences for those powder–cocaine counts." *Id.* at 550. The panel then affirmed the district court's decision to deny Baptiste's motion for a sentence modification for four reasons—all equally applicable here. *See id.* at 551. *First*, "First Step Act § 404 does not authorize the district court to reduce Baptiste's sentences[.]" *Ibid.* *Second*, "the sentencing-package doctrine doesn't apply[.]" *Ibid.* *Third*, "Baptiste cannot use § 401[.]" *Ibid.* *Fourth*, "the district court didn't abuse its discretion in deciding not to resentence Baptiste as to Count 3[.]"[7] *Ibid.* In other words, the Circuit "affirm[ed] the district court's decision" *not* to reduce Baptiste's sentence on *any* of his offenses—even the covered offense (Count 3). *Ibid.*

Wilson's reliance on *Bell*, 822 F. App'x at 887—decided *before* Baptiste—is misplaced. In that case:

> [A] jury found Bell guilty of two drug-distribution offenses involving at least 50 grams [of crack.] *See* 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(iii), 846 (2004). . . . Bell faced a guideline range of life imprisonment. Bell was also subject to an enhanced minimum penalty of life imprisonment for both offenses because the government filed a notice under 18

---

[7] As we'll explain in Section III, *infra*, we likewise won't resentence Wilson on Count 1, even though (as with Baptiste's Count III), we recognize that we have *the discretion* to resentence him on this count (and this count only).

> U.S.C. § 851 to establish that he had two or more prior convictions for a felony drug offense. *See* 21 U.S.C. § 841(b)(1)(A)(iii) (2004). The district court sentenced Bell to concurrent terms of life in prison. We affirmed Bell's convictions and sentence on appeal.

*Id.* at 885. After receiving a sentence reduction to 360 months, Bell argued on appeal that the district court "abused its discretion by sentencing him to 360 months based on an erroneous legal view that it lacked authority to reduce his sentence below the revised guideline range." *Id.* at 886. The Eleventh Circuit found that, because *both* of "Bell's offenses triggered those higher statutory penalties, which the Fair Sentencing Act modified, he is eligible for a reduction." *Ibid.* The court then vacated and remanded the case back to the district court because it was "unsure whether the [district] court erroneously believed that it lacked authority to reduce Bell's sentence below the revised guideline range." *Id.* at 887. For two reasons, *Bell* is inapposite here. *One*, and most importantly, *both* of Bell's offenses were *covered* offenses, so the district court unquestionably had the authority to reduce Bell's sentence. *Two*, unlike the district judge in *Bell*, we recognize our authority to reduce Wilson's sentence on his covered offense (Count 1). Although we decline to grant him such a reduction (for more on why, see Section III, *infra*), we also cannot ignore Wilson's bigger problem—which is that, whatever happens with Count 1, he's going to remain in custody for the rest of his life because of the sentence he received for Count 3 (which *isn't* a covered offense).

Still resisting, Wilson cites two district-court cases for his request that we apply the sentencing-package doctrine to his case. *See* Motion at 6–7 (citing *Clarke*, 2019 WL 7499892);[8] *id.* at 10 (citing *United States v. Jones*, 2019 WL 6907304, at *5–6 (D. Conn. Dec. 19, 2019)). Neither case helps him at all. We'll start with *Jones*, where "a jury convicted Mr. Jones of violating 18 U.S.C. § 1962(c), Racketeering in Corrupt Organizations ("RICO") (Count One); 18 U.S.C. § 1962(d), RICO Conspiracy (Count Two); 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, Conspiracy to Distribute and

---

[8] Pincite missing in original. *See* Motion at 6–7.

Distribution of More Than 1000 Grams of Heroin and 50 Grams of [Crack] . . . (Count Six); 18 U.S.C. § 1959(a)(5), [and] Conspiracy to Murder Anthony Scott (Count Twenty-One)." 2019 WL 6907304, at *1. Jones was sentenced "to the maximum of life imprisonment . . . on Counts One, Two, and Six[, and] ten years imprisonment on Count Twenty-One[.]" *Id.* at *2. According to the district court, "Jones was convicted of a 'covered offense'" and was "eligible for relief under the First Step Act" because he was sentenced "for an offense involving 50 grams or more of crack cocaine, the statutory penalties for which were modified by Section 2 of the Fair Sentencing Act." *Id.* at *5 (cleaned up).

According to Wilson, *Jones* stands for the proposition that "a reduced sentence on all counts applies under the sentencing package doctrine" in cases like ours. Reply at 3. But that's not true. For one thing, Jones's situation was nothing like Wilson's because Jones's life sentence was based on "Sentencing Guideline calculations [that] were applied to all four offenses of conviction, resulting in a life sentence for three counts," where "individual life sentences for each count of conviction . . . all flowed from a single offense level and Sentencing Guidelines calculation determination—a Sentencing Guideline calculation substantially affected, if not driven, by the base offense level for the [covered] crack cocaine violation." *Jones*, 2019 WL 6907304, at *8. That's just not our case. Wilson, as we've detailed, received a mandatory life sentence on Count 3 (a non-covered offense) by virtue of a statutory penalty that had nothing to do with—and was thus not "driven by"—the guideline sentence he received for the covered offense (Count 1).

For another, *Jones* relied on a Second Circuit case, *United States v. Triestman*, 178 F.3d 624, 630 (2d Cir. 1999), which isn't the law in our Circuit. *Triestman* held that "the district court had the authority . . . to resentence Triestman to the overall term that he would have received on his interdependent sentencing package absent his unlawful § 924(c) conviction." Although *Triestman* came out decades before the First Step Act was passed, the district court in *Jones* used this part of *Triestman*'s holding to support its view that "[t]he RICO, RICO Conspiracy, and heroin violations thus were addressed

together, with the crack cocaine violation, as part of a single sentencing package, and these offenses are inextricably related"—which the district court felt gave it "the authority to reduce Mr. Jones's entire sentence under the First Step Act." *Jones*, 2019 WL 6907304, at *8. Whatever the merits of this view, we're bound by the law of *our Circuit. See McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004) ("A circuit court's decision binds the district courts sitting [only] within its jurisdiction[.]"). And, in *our* Circuit, the First Step Act "does not authorize the district court to conduct a plenary or *de novo* resentencing." *Baptiste*, 834 F. App'x at 550 (cleaned up). Again, this means that "the sentencing-package doctrine is of no use" to Wilson because, "[a]lthough we have applied the sentencing-package doctrine in *some* instances, district courts still lack the inherent authority to modify a term of imprisonment except to the extent that a statute expressly permits." *Ibid.* (quoting *Jones*, 962 F.3d at 1297 (cleaned up & emphasis added)).

Wilson's second case, *Clarke*, likewise doesn't help him. Clarke was serving a life sentence after he was convicted of five offenses: "(1) racketeering conspiracy (Count I); (2) racketeering (Count II); (3) conspiracy to distribute and to possess with intent to distribute cocaine, . . . crack . . ., and marijuana (Count III); (4) conspiracy to import cocaine (Count IV); and (5) malicious destruction of property used in interstate commerce by means of fire and explosives resulting in the death of a public safety officer (Count XXVIII)." 2019 WL 7499892, at *1. For Count II, the racketeering charge, "the jury found that Clarke committed four racketeering acts, namely (1) conspiracy to distribute cocaine, crack cocaine, and marijuana (Racketeering Act One 'A'); (2) conspiracy to import cocaine (Racketeering Act One 'B'); (3) possession with the intent to distribute cocaine, crack cocaine, and marijuana (Racketeering Act 19); and (4) witness tampering (Racketeering Act 44)." *Ibid.* The drug-racketeering acts (Counts 1A, 1B, and 19) "increased the maximum statutory penalty on the racketeering offenses" to life. *Ibid.* Under the Sentencing Guidelines, "Clarke faced a term of life in prison[.]" *Ibid.* Noting that Clarke was "eligible for a sentence reduction on the covered offenses

18

charged in Counts 1, 2, and 3"—and recognizing that Clarke's "life sentences on [the non-covered offenses] Counts 4 and 28 were driven by her crack offenses, just as [she] has argued and the government has now conceded"—the court found the defendant "eligible for a reduced sentence on *all* counts." *Id.* at *2.

Two important points about *Clarke*. *One*, as our summation of that case makes plain, *Clarke* came out as it did "[b]ecause [the sentences for the non-covered offenses] were [ ] driven" by the sentencing guideline range for the covered offenses. *Ibid.* Unlike *Clarke* (and *Jones*), however, Wilson's sentence on the covered offense (Count 1) had no effect on the mandatory life sentence he received for the non-covered offense (Count 3). Judge Cooke, as we've seen, imposed the latter sentence because she *had to* under the unambiguous terms of a federal statute (§ 851) for reasons having *nothing* to do with the sentence Wilson received on Count 1. Since the sentence Wilson received for the non-covered offense wasn't "driven by" the sentence he received for the covered offense, *Clarke* (and the sentencing-packaging doctrine it applies) is simply inapposite here.

*Two*, *Clarke* came out before *Baptiste*. And we find persuasive *Baptiste*'s unambiguous pronouncement that "the sentencing-package doctrine is of no use" in our Circuit because, "[a]lthough we have applied the sentencing-package doctrine in *some* instances, district courts still lack the inherent authority to modify a term of imprisonment except to the extent that a statute expressly permits." *Baptiste*, 834 F. App'x at 550 (cleaned up & emphasis added).[9] To the extent anything in *Clarke* contradicts *Baptiste*'s central holding, we obviously won't be following in *Clarke*'s footsteps.

---

[9] We recognize that *Baptiste* is an unpublished decision and that "[u]npublished opinions are not binding precedent." *United States v. Izurieta*, 710 F.3d 1176, 1179 (11th Cir. 2013). Still, unpublished decisions "may be cited as persuasive authority," especially where (as here) the factual and legal issues between the unpublished case and ours are substantially the same. *See United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1138 n.4 (11th Cir. 2004); *cf. Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1345 n.7 (11th Cir. 2007) ("Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants. [The unpublished opinion] is not persuasive because its facts are materially different from this case.").

Still parrying, Wilson tries to show that the First Step Act likewise affected the mandatory life sentence he received for Count 3. Wilson is right that a *separate* provision of the First Step Act (§ 401) "made changes to certain 851 penalty enhancements for repeat offenders." Motion at 11 (citing *Mathews*, 837 F. App'x at 703); *see also* Reply at 4 ("[P]etitioner argues that [s]ection 401 of the First Step Act [m]ade changes to [the] [s]ection 851 penalty enhancement provision[,] which was used to enhance Mr. Wilson['s] sentence."). And that *might* have saved Wilson because his "mandatory life sentence[ ] was triggered by Section 851 for Count 3[.]" Resp. at 16; *see also* Government's Sentencing Memo. [ECF No. 432] at 5 ("Wilson received felony convictions" for "possession of cocaine in the 7th Circuit Court of Florida," which subjects him to a mandatory life sentence under the "[s]entencing [e]nhancement pursuant to 21 U.S.C. § 851(c)[.]" (cleaned up)); *id.* at 8 ("Wilson should receive a mandatory life sentence due to his two prior drug convictions pursuant to Title 21, U.S.C. § 841(b)(1)(II)." (cleaned up));[10] Judgment at 2 ("a term of LIFE as to count 3; 360 months as to count 1; 240 months as to count 2"—all counts to run concurrently with one another). But this argument likewise fails.

Section 401 of the First Step Act "amended certain penalty enhancements for prior offenses under Section 851, effectively reducing the prior offenses that can trigger enhanced penalties." *United States v. Russell*, 2021 WL 1597927, at *4 (N.D. Ala. Apr. 23, 2021); *see also* First Step Act, Pub. L. 115–391, § 401, 132 Stat. 5220 ("First Step Act § 401") (requiring a prior drug offense to be a "serious" drug felony and reducing the penalty for federal drug traffickers with two or more such prior felonies from life to "not less than 25 years"). Wilson was found guilty long before § 401's modification of § 851. Back then, a person (like Wilson) convicted of possessing with intent to distribute five kilograms or more of cocaine was subject to mandatory life imprisonment "after two or more prior convictions

---

[10] In its sentencing memorandum, the Government cited to "Title 21, U.S.C. §[ ]841(b)(1)(II)," Government's Sentencing Memo. at 8, which we assume was a scrivener's error. In its 851 notice, in fact, the Government cited correctly to § "841 (b)(1)(A)." Government's 851 Notice at 1–2.

for a *felony drug offense*[.]" 21 U.S.C. § 841(b)(1)(A) (2005) (emphasis added); *see also* 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(ii) (2005) (laying out the offense). Under § 401 of the First Step Act, however, a person convicted of the same offense would be sentenced to a mandatory minimum of 25 years if he received two or more convictions for a *serious* drug felony[.]" First Step Act § 401(a)(2)(A)(ii) (emphasis added) (modifying 21 U.S.C. § 841(b)(1)(A)). None of this helps Wilson, though, because—unlike § 404 of the First Step Act—§ 401 *doesn't* apply retroactively. *See* First Step Act § 401(c) ("This section, and the amendments made by this section [including to section 851 enhancements], shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment."); *Baptiste*, 834 F. App'x at 551 ("In unambiguous terms, the First Step Act makes its amendments only prospectively applicable."). And, since Wilson was sentenced on November 9, 2005, *see* Judgment at 1[11]—more than thirteen years *before* the First Step Act's enactment on December 21, 2018—§ 401 doesn't apply to his case, *see Mathews*, 837 F. App'x at 704 ("Mathews is not eligible for relief under section 401 of the First Step Act because that provision, by its plain language, does not apply to sentences that were imposed before December 21, 2018."); *Baptiste*, 834 F. App'x at 551 ("Baptiste's sentences were enhanced under 21 U.S.C § 851 because of his prior felony conviction. . . . Baptiste, who was sentenced on October 25, 2007, is not entitled to a sentence reduction under First Step Act § 401."); *accord* Resp. at 16 ("[A]lthough Section 401 of the First Step Act made changes to certain Section 851 penalty enhancements for repeat offenders, those changes were not made retroactive.").

Finally, Wilson offers a series of policy arguments, imploring us to consider "Congress' conclusion that sentences like this are unfair and unnecessary[.]" *See, e.g.*, Motion at 5 (citing *Concepcion*, 597 U.S. at 488–89). But these policy arguments and emotional appeals do not change the law—and

---

[11] The "Date of Imposition of Sentence" was "11/9/2005," and Judge Cooke signed the Judgment six days later—on November 15, 2005. Judgment at 1.

we are duty-bound to follow the law. Because the First Step Act does nothing to reduce the mandatory life sentence Wilson received for Count 3—and since the "the sentencing-package doctrine is of no use" to Wilson, *Baptiste*, 834 F. App'x at 550 (quoting *Jones*, 962 F.3d at 1297)—we **DENY** Wilson's First Step Act Motion.

## III.   The § 3553(a) Factors Counsel Against a Reduction

And we won't be reducing Wilson's sentence on the *covered* offense (Count 1), either, because the factors Congress laid out in 18 U.S.C. § 3553(a) counsel against any such reduction. Wilson insists that he's "reach[ed] a[n] age w[h]ere the statistics on . . . recidivism show that his likelihood of re-offending has meaningfully declined." Motion at 17. He also believes that "his rehabilitation efforts . . . undertaken without any reasonable prospect of a reduced sentence" and his "current post sentencing conduct while incarcerated and continuing efforts to better himself bode well for his successful reintegration." *Id.* at 16(a)–17.[12] In his view, then, we should "exercise[e] [our] . . . discretion" to "re-impose[ a] sentence of time served[.]" *Id.* at 17.

We won't delve deeply into Wilson's self-serving claims to rehabilitation[13] because the circumstances of this case—coupled with Wilson's troubling criminal history—suggest that *greater* weight should be given to the "need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense[.]" 18 U.S.C. § 3553(a) (cleaned up); *see also United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007) ("The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court[.]");

---

[12] Two pages in Wilson's Motion are numbered "16[.]" To correct this scrivener's error, we'll refer to the first as 16(a) and the second as 16(b). We'll therefore leave page number "17" as is.

[13] We do, however, think it noteworthy that Wilson offers no tangible evidence of this rehabilitation. He, for instance, attaches no letters from friends, guards, fellow inmates, or clerics attesting to this rehabilitation; presents no certificates of classes he's passed, degrees he's earned, or skills he's mastered in prison; and never suggests that there are loved ones (much less employers) out there who will be willing to keep him honest if he's released. Weighed against the nature and severity of his criminal conduct—and the seriousness of his criminal history—these conclusory (and self-serving) declarations of reform carry little weight here.

*Moore*, 2022 WL 3651932, at *3 ("[T]he district court explicitly considered Moore's post-conviction rehabilitation, fulfilling its obligation to consider intervening changes of fact raised by the movant under *Concepcion*. It made a reasoned decision that those factors were outweighed by the numerous factors that counseled against a sentence reduction."). Wilson's offenses were very serious. For starters, he "was the organizer/leader of the criminal activity." PSI ¶ 22. As the Government points out, Wilson "orchestrated" this scheme, in which he "and others kidnapped codefendant/cocaine supplier Roody Laguerre and his three-year-old goddaughter, in an attempt to rob Laguerre of multi-kilograms of cocaine the gang suspected he possessed," "brandishing [a] firearm[ ]" during the kidnapping. Response at 6. His total offense level was therefore 40—reflecting the extreme seriousness of his offense. *See* PSI ¶ 40.[14]

Nor was this Wilson's first run-in with the law. By the time he committed these offenses, Wilson already had prior convictions for:

- Possession of a controlled substance with intent to distribute;

- Carrying a concealed firearm (twice);

- Obstructing justice/false information;

- Resisting arrest without violence;

- Disobeying a police officer;

- Possession of cannabis; and

- Trespass (and, separately, trespass after warning).

*Id.* ¶¶ 42–53.[15] Indeed, in 2004—*the very same year* he was indicted in our case—Wilson was arrested for second-degree murder and aggravated battery arising from two separate incidents against the same

---

[14] Note that the highest possible offense level under the Sentencing Guidelines is 43. In other words, Wilson's conduct was almost as bad as it gets.

[15] He also agreed to withholds-of-adjudication for carrying a concealed firearm, possessing cocaine, fleeing and eluding a police officer, retail theft, and possessing marijuana. *See* PSI ¶¶ 42–53.

victim. *Id.* ¶¶ 62–63. In the first of those arrests, Wilson "pulled out a handgun and shot approximately 15 rounds" at the victim's vehicle, telling her "I'm gonna kill you." *Id.* ¶ 63. In the other, Wilson "pushed the victim to the ground and began kicking her in the face . . . then retrieved a butcher knife and stabbed the victim in the left thigh." *Id.* ¶ 62. In total, by the time he was indicted here, Wilson had amassed seven adult criminal convictions. *See id.* ¶¶ 42–53. Plus, he had sustained five withholds-of-adjudications, *see ibid.*, and he'd been arrested four *other* times for serious crimes, including for grand theft and carrying a concealed firearm, *see id.* ¶¶ 56–63, 65.[16] For all these reasons, Judge Cooke (of our Court) *already determined* that the § 3553(a) factors weigh against a reduction for Wilson. In her words:

> The 18 U.S.C. § 3553(a) factors also militate against release. The Defendant directed other individuals to kidnap and beat an illegal drug supplier. ECF No. 609 at 2–3. In the process a three-year-old child was also kidnapped. *Id.* While the drug supplier was held, he was tortured with an iron, in an effort to make him disclose the location of his drug supply. *Id.* While the Defendant's crew was transporting the drug supplier to another location, presumably for further torture or worse, the supplier escaped. *Id.* These factors militate against release.

Order Denying Motion for Home Confinement at 2. To reduce Wilson's sentence now would suggest that his offenses were not so serious, undermine the People's respect for the law, and afford little deterrence. We won't have any part in that.

\*\*\*

After careful review, therefore, we hereby **ORDER and ADJUDGE** that Wilson's Motion for Reduction of Sentence [ECF No. 647] is **DENIED**.

---

[16] These don't even include his six traffic convictions. *See* PSI ¶¶ 56–63, 65.

**DONE AND ORDERED** in the Southern District of Florida on April 8, 2025.

_____
**ROY K. ALTMAN**
**UNITED STATES DISTRICT JUDGE**

cc:    Gary Wilson, *pro se*